UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WENDY A. SOUTHARD, | ) | No. CV 14-7287 AGR |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff Wendy A. Southard filed this action on September 24, 2014.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 9, 10.)  On March 31, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

## PROCEDURAL BACKGROUND

On March 8, 2012, Southard filed an application for disability insurance benefits, alleging an onset date of December 31, 2008.  Administrative Record ("AR") 113-16. The applications were denied.  AR 10, 71-72.  Southard requested a hearing before an Administrative Law Judge ("ALJ").  AR 78-79.  On January 9, 2013, the ALJ conducted a hearing at which Southard, two medical experts, and a vocational expert testified.  AR 24-40.  On February 19, 2013, the ALJ issued a decision denying benefits.  AR 10-20. On August 20, 2014, the Appeals Council denied the request for review.  AR 1-3.  This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

**III.**

**DISCUSSION**

### A.   Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B.   The ALJ's Findings

The ALJ found that Southard met the insured status requirements through December 31, 2014.  AR 12.  Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Southard has the severe impairments of anxiety and depression, status post left wrist fracture with reduced grip and 4th and 5th finger limitations (cannot fully extend).  AR12.  Her impairments do not meet or equal a listing.  AR 14.  She has the residual functional capacity ("RFC") to perform light work, except she can lift or carry 20 pounds occasionally, 10 pounds frequently, stand or walk for six hours in an eight-hour work day, sit for six hours in an eight-hour work day, occasionally kneel, and frequently perform other postural functions.  AR 15-16.  She should avoid concentrated exposure to temperature extremes, smoke, and dust, and is limited to no more than occasional contact with supervisors and co-workers, and the performance of simple, repetitive work with no public contact.  AR 16.  She is unable to perform any past

---

[1]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

1  relevant work, but there are jobs that exist in significant numbers in the national

2  economy that she can perform, such as laundry sorter, small products assembler, and

3  cafeteria attendant.  AR 18-19.

4  **C.   Credibility**

5  "To determine whether a claimant's testimony regarding subjective pain or

6  symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v.*

7  *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine

8  whether the claimant has presented objective medical evidence of an underlying

9  impairment 'which could reasonably be expected to produce the pain or other

10  symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)

11  (en banc)).

12  "Second, if the claimant meets this first test, and there is no evidence of

13  malingering, the ALJ can reject the claimant's testimony about the severity of her

14  symptoms only by offering specific, clear and convincing reasons for doing so."

15  *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a

16  credibility determination, the ALJ 'must specifically identify what testimony is credible

17  and what testimony undermines the claimant's complaints[.]'"  *Greger v. Barnhart*, 464

18  F.3d 968, 972 (9th Cir. 2006) (citation omitted).

19  In weighing credibility, the ALJ may consider factors including:  the nature,

20  location, onset, duration, frequency, radiation, and intensity of any pain; precipitating

21  and aggravating factors (e.g., movement, activity, environmental conditions); type,

22  dosage, effectiveness, and adverse side effects of any pain medication; treatment,

23  other than medication, for relief of pain; functional restrictions; the claimant's daily

24  activities; and "ordinary techniques of credibility evaluation."  *Bunnell*, 947 F.2d at 346

25  (citing Social Security Ruling ("SSR") 88-13)[2] (quotation marks omitted).  The ALJ may

26

27  [2]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute

28  Social Security Administration interpretations of the statute it administers and of its own

1  consider:  (a) inconsistencies or discrepancies in a claimant's statements; (b)

2  inconsistencies between a claimant's statements and activities; (c) exaggerated

3  complaints; and (d) an unexplained failure to seek treatment.  *Thomas v. Barnhart*, 278

4  F.3d 947, 958-59 (9th Cir. 2002).

5      As the ALJ noted, Southard testified that she cannot work secondary to difficulty

6  walking and difficulty being in crowds or being around other people.  AR 16-17, 29.  She

7  gets irritated and cannot communicate with other people.  AR 17, 29.  She has panic

8  attacks that occur three to four times per week either at home or when she is outside.

9  AR 17, 29-30.  She hears voices of her deceased mother and her daughter's deceased

10  father.  AR 17, 30.  She gets nervous easily and was told by her son that she sees

11  things or people that are not there.  AR 17, 30.  Her medication side effects cause her

12  to feel like her equilibrium is off.  AR 19, 31.  She has pain in her legs and hip, and uses

13  a baby stroller or a push cart to hold on to when she walks outside of the house.  AR

14  17, 31.  She can walk about five blocks, but has to stop and rest "[a]fter a block or two."

15  AR 17, 32.  She cannot stand for long periods of time in one spot because her "legs will

16  give out."  AR 17, 32.

17      The ALJ found that Southard's medically determinable impairments could

18  reasonably be expected to cause the alleged symptoms, but that her statements

19  concerning the intensity, persistence and limiting effects of her symptoms were not

20  credible.  AR 17.  The ALJ primarily relied on three reasons: (1) the objective evidence

21  did not support Southard's claims of disabling pain and limitations; (2) Southard

22  received conservative treatment; and (3) Southard's activities of daily living were not

23  consistent with the alleged degree of pain and impairment.  AR 17.

24

25

26

27  _____

28  regulations," and are given deference "unless they are plainly erroneous or inconsistent
   with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1                    1.  <u>Objective Evidence</u>

2          Southard argues that the objective evidence supports her testimony regarding her

3    pain.  Specifically, she argues that the record demonstrates that she complained to Dr.

4    Gill, a treating physician, about pain in the knees, pelvic area, right shoulder and joints.

5    AR 254-55, 258, 260-61.

6          Although lack of objective medical evidence supporting the degree of limitation

7    "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ

8    may consider in assessing credibility.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

9    2005).  Regarding Southard's right shoulder, the record indicates that Southard had a

10   follow-up appointment with Dr. Gill on November 4, 2011, at which time she reported

11   that she hit herself with a coffee table on Friday night and was hospitalized for four days

12   for severe pain in her right shoulder blade.  AR 260.  At her next appointment on

13   November 22, 2011, Southard complained only of a cold.  AR 259.  Southard did not

14   mention right shoulder pain in subsequent appointments with Dr. Gill or to Dr. Sedgh, a

15   consultative examiner.  AR 232, 254-58, 308.  X-rays of the bilateral knees in June

16   2011 and February 2012 showed no acute bony change, although swelling was present

17   in February 2012.  AR 17, 258, 267-68, 276.  An examination of the back and knees on

18   July 21, 2012, showed good range of motion with no swelling or deformity, although a

19   July 30, 2012 treatment note indicated swelling of the right knee with tenderness.  AR

20   17, 234-36, 254.  An x-ray of the right hip in June 2011 showed small bony density

21   overlying the femoral head, and possible old avulsion injury at the posterior acetabulum.

22   AR 275.  An x-ray of the pelvis in February 2012 showed a normal right hip.  AR 269.  In

23   addition, the ALJ found that the objective evidence showed that Southard's

24   hypertension could be controlled with medication, with no evidence of stroke or

25   congestive heart failure.  AR 17, 233, 236.  Radiographs of the left wrist and hand

26   showed no fracture or dislocation, although there was deformity and decreased range of

27   motion of the left wrist and decreased left hand grip.  AR 14, 236, 238.  Dr. Sedgh found

28

                                          6

that Southard retained the ability to perform a range of light work, with fine and gross manipulative functions on an occasional basis with the left hand, and postural functions on an occasional basis.  AR 14, 236.

Regarding the degree of Southard's alleged mental limitations, the ALJ noted that the treatment records did not corroborate panic attacks to the extent Southard alleged.  AR 17, 163-74, 206-30, 293-306.  Southard had Global Assessment of Functioning ("GAF") scores between 60 and 65, which indicate mild to moderate mental symptoms.[3]  AR 219, 225, 246, 302-03.  Her mental status examinations revealed that she was "stable," with no apparent thought process or thought content disturbances, and with intact judgments and adequate insight.  AR 218, 245, 301, 304.  She had suspicious ideation, impaired concentration, impaired recent memory, and a depressed mood.  AR 218, 301, 304.  Dr. Nadella, a consultative examiner, found that Southard had only mild mental limitations and could perform simple and repetitive tasks, as well as detailed and complex tasks.  AR 17-18, 247.

The ALJ's finding as to the objective medical record as a whole is supported by substantial evidence.

## 2. Conservative Treatment

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted).  The ALJ noted that Dr. Gill recommended conservative management for Southard's physical pain in the form of medication, diet modifications,

---

[3]  A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).  A GAF score of 61-70 indicates "some mild symptoms, such as depressed mood and mild insomnia, or some difficulty in social occupational, or school function, such as occasional truancy or theft within the household, but generally functioning pretty well, and has some meaningful interpersonal relationships."  *Id.*

1   and exercise.[4]  AR 17, 254-66, 308.  The ALJ noted that Southard was treated

2   sporadically and conservatively for her mental health symptoms, and had a gap in

3   treatment within the past year.  AR 17, 244.  She had no inpatient psychiatric treatment.

4   AR 244.  She was treated with therapy and medication at Kedren Adult Outpatient Clinic

5   from March 2011 to October 2011, was treated at August Hawkins Adult Outpatient

6   Clinic in May 2011, and returned to Kedren for treatment in June 2012.  AR 163-74,

7   206-30, 293-302, 306.  The ALJ's finding is supported by substantial evidence.

8   Moreover, Southard does not challenge the ALJ's reliance on conservative treatment in

9   discounting her credibility.

10              3.  Activities of Daily Living

11         An ALJ may consider a claimant's daily activities when weighing credibility.

12   *Bunnell*, 947 F.2d at 346.  The ALJ found that Southard could perform a fairly wide

13   range of activities of daily living, go to church, manage her money and shop by herself

14   for about three to four hours.  AR 17, 144, 154.  Southard told Dr. Nadella in July 2012

15   that she could dress, bathe and take care of her personal hygiene without assistance.

16   AR 245.  In the Function Report – Adult dated June 26, 2012, Southard reported that

17   she prepares her own food weekly, which takes her one or two hours, and she stays

18   away from fire and knives because her hands shake.  She cleans the kitchen,

19   bathroom, and washes clothes every one to two weeks, with occasional help from her

20   son.  AR 153.  She enjoys watching television, eating, and playing with her three year-

21   old grandson on a daily basis.  She goes to church almost every Sunday and does not

22   need someone to accompany her.  AR 155.   She walks about five blocks to the market

23   by herself, using a baby stroller or push cart to hold onto.  AR 31-32.  Southard argues

24   that she need not be completely incapacitated in order to be determined disabled.

25   _____

26       [4] Surgery for lipoma is indicated on the July 30, 2012 treatment note.  AR 254.  A
      lipoma is a fatty lump often situated between the skin and the underlying muscle layer.
27    Http://www.mayoclinic.org/diseases-conditions/lipoma/basics/definition/con-20024646
      (last visited on July 15, 2015).  The record does not indicate limitations or pain relating
28    to lipoma.  AR 232, 254-76, 308.

1  However, the ALJ permissibly relied on evidence that Southard could perform a variety

2  of daily activities as a factor undermining the alleged severity of symptoms.

3       The ALJ's credibility finding is supported by substantial evidence.  "If the ALJ's

4  credibility finding is supported by substantial evidence in the record, we may not engage

5  in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec.*

6  *Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).  The ALJ did not err.

7       **D.**   **Lay Witness Testimony**

8       Southard contends the ALJ did not properly consider the Third Party Function

9  Report of her daughter, Anndraya Stinson.

10      "In determining whether a claimant is disabled, an ALJ must consider lay witness

11  testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec.*

12  *Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  "When an ALJ discounts the testimony of

13  lay witnesses, 'he [or she] must give reasons that are germane to each witness.'"

14  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation

15  omitted).

16      Ms. Stinson completed a Third Party Function Report on June 25, 2012.  AR 141-

17  50.  In the report, she stated that Southard forgets, hears voices, needs reminders to do

18  things "every now and then," and has a "disabled" left hand.  AR 141.  Southard can no

19  longer walk straight, stand for a long time, remember things, and sleep well.  AR 142.

20  She has difficulty dressing and bathing, and cannot use her hands too long to shave,

21  feed herself, or cook due to numbness.  AR 142-43.  Her left hand and arm are not fully

22  functional.  AR 144.  She does light chores for three or four hours per week, but must

23  be reminded to clean.  AR 143.  She uses a baby stroller to walk, and may go out to get

24  the mail, shop, or use public transportation.  When she shops, she goes for three to four

25  hours twice a month either by herself or with someone else.  AR 144.  She does not

26  spend time with others because she "trust[s] no one," but she goes to church "at least

27  once or twice" with the neighbor.  AR 145.  She cannot climb five stairs without taking

28  breaks, cannot concentrate long or get things done without reminders, has difficulty

1  following simple instructions, and has mood swings where she may appear to be a
2  totally different person.  AR 146.  She has difficulty lifting, squatting, bending, standing,
3  reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing,
4  remembering, completing tasks, concentrating, understanding, following instructions,
5  using her hands, and getting along with others.  AR 148.  She is stressed, cries a lot,
6  and overeats.  AR 149.

7       The ALJ discussed and summarized the Third Party Function Report of Ms.
8  Stinson, but did not give any reasons for discounting her testimony.  AR 16.  However,
9  the ALJ's error was harmless in this case.  "Where lay witness testimony does not
10  describe any limitations not already described by the claimant, and the ALJ's well
11  supported reasons for rejecting the claimant's testimony apply equally well to the lay
12  witness testimony, it would be inconsistent with our harmless error precedent to deem
13  the ALJ's failure to discuss the lay witness testimony to be prejudicial per se."  *Molina v.*
14  *Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012); *Valentine*, 574 F.3d at 694 (when ALJ
15  provided clear and convincing reasons for rejecting claimant's testimony and lay
16  witness' testimony was similar, "it follows that the ALJ also gave germane reasons for
17  rejecting the [lay witness'] testimony.").  Here, Ms. Stinson did not identify material
18  limitations that were not generally described by Southard.  AR 29-32, 141-59.  As
19  discussed above, the ALJ articulated sufficient reasons supported by substantial
20  evidence for discounting Southard's credibility.  The ALJ's error in failing to articulate
21  reasons for discounting Ms. Stinson's statements was, therefore, harmless.  Moreover,
22  Southard does not contend otherwise.

23
24
25
26
27
28

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 20, 2015

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

11